UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| PROLINK SOLUTIONS, LLC, a Delaware limited liability company; PROLINK HOLDING CORP., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 2:07-cv-02128 JWS |
| vs. | ) ) ) | ORDER AND OPINION |
| GPS INDUSTRIES, INC., a Nevada corporation; UPLINK CORPORATION, a Texas corporation; EL RIO GOLF CLUB, LLC, a Delaware limited liability company; CAMELBACK GOLF CLUB, a Delaware corporation | ) ) ) ) ) ) ) ) | [Re:  Motion at Docket 33] |
| Defendants. | ) ) | |

## I.  MOTION PRESENTED

At docket 33, defendants GPS Industries, Inc. ("GPSI"), UpLink Corporation
("UpLink"), El Rio Golf Club, LLC, and Camelback Golf Club (collectively "defendants")
move for an order dismissing Count IV of plaintiff's complaint (for declaratory judgment)
pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction).
Plaintiffs ProLink Solutions, LLC and Prolink Holding Corporation (collectively "Prolink"

or "plaintiffs") oppose defendants' motion at docket 39.  Defendants reply at docket 42.
Oral argument was heard on December 23, 2008.

## II.  BACKGROUND

ProLink filed its complaint on November 1, 2007, alleging three counts of patent
infringement against defendants for infringement of (1) U.S. Patent No. 6,525,690
(Count I); (2) U.S. Patent No. 6,236,940 (Count II); and (3) U.S. Patent No. 6,470,242
(Count III).[1]  ProLink also included a claim for a declaratory judgment of non-
infringement of U.S. Patent No. 5,685,786 (the "'786 Patent") (Count IV).[2]  ProLink's
claim for declaratory relief is based on statements made by "a senior executive of
GPSI" to Duka Martinovic ("Martinovic"), who is the CEO of a third party, Techno
Design, Inc., d/b/a SeeSwing.[3]  According to ProLink's complaint, on or about July 31,
2007, an unnamed "senior executive of GPSI threatened to sue Plaintiffs for patent
infringement of the '786 Patent."[4]  "[T]he GPSI senior executive advised Duka
Martinovic that, once GPSI merged with Uplink, they would sue Plaintiffs for patent
infringement."[5]  Martinovic allegedly relayed this information to ProLink executives, with
whom he had previous business relationships.[6]  Based on this information, ProLink

[1]Docket 1 ¶¶ 11-28.

[2]*Id.* ¶¶ 29-39.

[3]*Id.* ¶¶ 32-35.

[4]*Id.* ¶ 34.

[5]*Id.* ¶ 35.

[6]Docket 39-3 at 2 ¶ 4.

claims to have been "apprehensive of an imminent suit for infringement of the '786 Patent," which led it to make its claim for declaratory relief.[7]

Defendants moved to dismiss Count IV on April 8, 2008, claiming that ProLink's allegations "are insufficient to meet Plaintiffs' burden to establish the existence of an immediate, actual justiciable controversy between the parties regarding the '786 Patent."[8]  Defendants further allege that ProLink's information is based entirely on inadmissible double hearsay that may not be considered in assessing whether the court has subject matter jurisdiction over Count IV.[9]   In support of their motion, defendants attach the affidavits of three GPSI executives, who all deny having discussed a potential infringement suit on the '786 patent with Martinovic.[10]  All three affiants confirm that they attended a meeting with Martinovic on July 31, 2007 at the offices of Techno Design, Inc.[11]  In opposition to defendants' motion, ProLink attaches the affidavits of Martinovic and Andy Batkin ("Batkin"), CEO of ProLink, as well as contemporaneous e-mails among ProLink executives regarding GPSI's alleged threat, to rebut GPSI's claim that no such threat was made.[12]  These affidavits generally outline the substance of a conversation between Robert C. Silzer ("Silzer") and Martinovic,[13] as well as the

---

[7]Docket 1 ¶ 36.

[8]Docket 33 at 2.

[9]*Id.*

[10]*See* Docket 33-2.

[11]*Id.*

[12]Docket 39-2.

[13]Docket 39-3 ¶ 8.

communiqué between Martinovic and Batkin.[14]   ProLink also attaches GPSI's Form

10KSB, a filing with the SEC dated April 15, 2008, which discusses the January 18,

2008 acquisition of UpLink and the '786 patent.

On July 16, 2008, after GPSI acquired the '786 patent from UpLink, GPSI filed

suit against ProLink for infringement of the '786 patent in the Northern District of

Illinois.[15]   GPSI filed a notice of its suit with this court the following day.[16]   In its notice,

GPSI argues that "the Illinois Complaint is irrelevant to the issues raised by GPSI's

motion to dismiss.  Subject matter jurisdiction is measured as of the date of the

complaint (here, November 1, 2007) and post-complaint events may not create

jurisdiction where none existed at the time the complaint was filed."[17]   ProLink

responded to the notice on the same day and argues that GPSI's Illinois suit on the

'786 patent confirms that Count IV is justiciable.[18]

## III.  DISCUSSION

The issue the court must decide is whether the factual allegations supporting

Count IV establish an actual, justiciable controversy with respect to the '786 patent.

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the

burden of proving jurisdiction in order to survive the defendant's motion to dismiss.[19]   "A

---

[14]Docket 39-2 ¶ 3.

[15]Docket 52-2.

[16]Docket 52.

[17]*Id.* at 2.

[18]Docket 54 at 3.

[19]*Tosco v. Comtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."[20]

Motions to dismiss under Rule 12(b)(1) "may be used to attack two different types of jurisdictional defects" - facial insufficiency or factual insufficiency.[21]  Facial attacks challenge the sufficiency of the pleading pursuant to Rule 8(a)(1), "which means that the allegations in the complaint are insufficient to show that the federal court has jurisdiction over the subject matter of the case as [Rule 8] requires."[22]  A factual attack, on the other hand, permits the movant to challenge the substance of the jurisdictional allegations[23] and the court to consider litigation affidavits or other appropriate evidence to resolve disputes concerning jurisdiction.[24]  Once a factual attack is made, a district judge may examine evidence presented by both parties to determine whether jurisdiction exists.[25]  "Conversely, the pleader may establish the actual existence of subject matter jurisdiction through extra-pleading material."[26]  Because GPSI has

---

[20]*Smith v. McCullough*, 270 U.S. 456, 459 (1926).

[21]*White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000); *see also* 5B Wright and Miller, Federal Practice and Procedure: Civil 3d § 1350 (2004) (hereinafter, "Wright and Miller").

[22]Wright and Miller § 1350.

[23]*Id.*

[24]*McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

[25]Wright and Miller § 1350.

[26]*Id.*

submitted affidavits and evidence in support of its motion to dismiss, the court treats GPSI's motion as a factual attack on the sufficiency of ProLink's jurisdictional allegations in support of its declaratory judgment claim.

Having reviewed the affidavits submitted by both parties, Batkin's contemporaneous email, and GPSI's April 15, 2008 SEC filing, the court concludes that ProLink has "failed to show that there is an actual, justiciable controversy with respect to the '786 Patent, of sufficient immediacy and reality as required for subject matter jurisdiction to exist" under the Declaratory Judgment Act and Article III of the United States Constitution.[27]  The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[28]  A "case of actual controversy" under the Declaratory Judgment Act is coextensive with Article III's justiciability requirements.[29]  The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy.[30]  "The burden is on the declaratory-judgment plaintiff to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint

_____

[27]Docket 33 at 2.

[28]28 U.S.C. § 2201(a).

[29]*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).

[30]*A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961); *see also Chesebrough-Ponds, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).

was filed."[31]  Although Declaratory Judgment Act jurisprudence has not traditionally

drawn the "brightest of lines between those declaratory-judgment actions that satisfy

the case-or-controversy requirement and those that do not," the Supreme Court

recently brightened that line.

In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court examined the test

for justiciability of an action for declaratory judgment in a patent case.[32]  Citing its earlier

decision in *Aetna Life Insurance Company v. Haworth*, the Court held that, for a

declaratory judgment action to be justiciable, the dispute must be "'definite and

concrete, touching the legal relations of the parties having adverse legal interests'; and .

. . 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive

character, as distinguished from an opinion advising what the law would be upon a

hypothetical state of facts.'"[33]  The Court concluded, quoting *Maryland Casualty v.*

*Pacific Coal & Oil Company*, that "[b]asically, the question in each case is whether the

facts alleged under all the circumstances, show that there is a substantial controversy,

between the parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment."[34]  The Federal Circuit Court of

---

[31]*Sierra Applied Sciences v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004).

[32]127 S. Ct. 764, 770-77 (2007).

[33]*MedImmune*, 127 S. Ct. at 771 (quoting *Aetna*, 300 U.S. at 240-41).

[34]*MedImmune*, 127 S. Ct. at 771 (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  In so concluding, the Court rejected the Federal Circuit's "reasonable apprehension of imminent suit" test, as enunciated in *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004).  *MedImmune*, 127 S. Ct. at 774 n.11; *see also Sandisk Corporation v. STMicroelectronic*s, *Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007).

Appeals has interpreted *MedImmune*'s standard in several recent cases, concluding that "declaratory judgment jurisdiction will generally not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, *without some affirmative act by the patentee*."[35]

Although Silzer did not mention the specific patent to Martinovic during their conversation, Martinovic appears to have obtained enough information from Silzer to infer that GPSI intended to bring suit against ProLink on UpLink's "advertising patent," which neither party disputes is the same as the '786 patent.[36]  Nevertheless, Silzer's statements to Martinovic do not constitute an affirmative act giving rise to a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  ProLink brought its declaratory judgment claim on the '786 patent on November 1, 2007, but GPSI did not acquire the '786 patent until January 18, 2008.  Because GPSI's deal with UpLink for the '786 patent was not final at the time ProLink filed suit, and would not be final until over two months after ProLink filed its claim for declaratory relief, GPSI had no rights in the UpLink patent and could not have brought suit itself on the '786 patent at that time.  The occurrence of indefinite future events - like the closing of a merger or an acquisition - is too speculative to create an

---

[35]*Sandisk*, 480 F.3d at 1380-81 (emphasis added); *see also Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 900-02 (Fed. Cir. 2008); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336-39 (Fed. Cir. 2007).

[36]Docket 39-2 ¶ 3.  GPSI's Form 10-KSB, filed with the SEC on April 15, 2008, attached as Exhibit 1 to ProLink's opposition brief and judicially noticed under Federal Rule of Evidence 201, states that the '786 patent "provides coverage for displaying advertising information." Docket 39-4 at 4.  GPSI does not appear to have acquired any other advertising patents from UpLink.

actual controversy warranting the issuance of a declaratory judgment.[37]  It is beyond

cavil that GPSI's acquisition of UpLink was, at most, a speculative future event at the

time ProLink filed its declaratory judgment action.  Thus, the parties could not have had

an "adverse legal interest," even if an initial acquisition agreement was in place, prior to

the time when GPSI acquired definitive legal rights in the '786 patent.  Because GPSI

did not have any rights in the '786 patent until after ProLink filed for a declaratory

judgment, any threat made by Silzer in the summer of 2007 would have been empty,

and not an affirmative act sufficient to give rise to subject matter jurisdiction at the time

ProLink filed its complaint.

## IV.  CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Count IV of

plaintiffs' complaint is **GRANTED**.

DATED at Anchorage, Alaska, this 24th day of December 2008.


_____/s/_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[37]*Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008).